UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BARBARA CONNICK

    Plaintiff

v.

CONTINENTAL CASUALTY
COMPANY

    Defendant

CIVIL ACTION NO. 04-12208-WGY

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I.   INTRODUCTION

This action is brought by Barbara Connick against Continental Casualty Company, her former employer.  Barbara Connick alleges that Continental Casualty Company discriminated against her in violation Title VIII of the Civil Rights Act, as amended, 42 U.S.C. §2000e, et seq. because the defendant fostered a work environment that allowed her to be harassed based on her race (Caucasian). Defendant further violated the statute by failing to conduct an appropriate investigation into her several complaints of harassment based on her race and failed to take appropriate action to remedy the unlawful racial harassment. Ms. Connick seeks compensation for the grave harm she suffered and continues to suffer as a result of the actions and omissions of the defendant and seeks equitable and injunctive relief.

1

## II. PARTIES

1. Plaintiff BARBARA CONNICK, (Hereinafter, "Connick") is a resident of Hull, Plymouth County, Massachusetts. Plaintiff was an employee of Defendant, Continental Casualty Company for approximately fifteen years until she commenced a medical leave of absence on or about September 1999.

2. Defendant, CONTINENTAL CASUALTY COMPANY (Hereinafter, "CNA") has an office located in Quincy, Norfolk County, Massachusetts.

3. CNA is a "person" within the meaning of Section 701(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(a).

4. CNA is engaged in an industry affecting commerce and employs 15 or more employees, and is an "employer" within the meaning of Section 701(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

## III. JURISDICTION

5. This suit is brought and jurisdiction lies pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5(f) and 2000e-5(g), as well as 28 U. S. C. §1331, and 28 U. S. C. §2201 and 2202.

6. Venue is proper in this district pursuant to 28 U. S. C. §1391(b) and 42 U.S.C. §§ 2000e-5(f) (3) insofar as all the discriminatory employment practices alleged in her complaint were committed within the County of Norfolk in the Commonwealth, the plaintiff resides in the County of Plymouth in the Commonwealth of Massachusetts and the

defendant conducts business and has substantial business contacts in the Commonwealth of Massachusetts.

## IV.     STATEMENT OF FACTS

7. CNA employed Ms. Connick for approximately fifteen years. At all relevant times Ms. Connick performed the functions of her job in a fully satisfactory manner. At all relevant times Abbi Laushine was her direct supervisor.

8. Ms. Connick was subject to harassment based on her race on an ongoing basis. She reported this conduct to her former supervisor, Laura Nichols, however no action was taken.

9. In June 1999 Greta Thomas, (African American), a co-worker stared at Ms. Connick during an office party. She also threatened Ms. Connick with physical violence. Ms. Connick reported this misconduct to Abby Laushine, however no action was taken.

10. Between June 1999 and August 1999 Ms. Connick was subject to continual harassment based on her race. Several African American employees, including Heather Gill Grace Clements, Shauna Williams and Ernie Goddard gathered together on a daily basis. They made demeaning and derogatory comments and mimicked employees based on their race.

11. During the week August 20, 1999 Grace Clements and Shauna Williams were talking at Shauna's desk. Ms. Connick heard Grace Clements say that she (Ms. Connick) "was pure garbage." Shauna said that, "Heather would have no problem

3

beating her up." Shauna stated, "White trash bitch, we'll get Heather to beat her up"

12. Ms. Connick reported the threatening and racially charged statement to her supervisor, Abbi Laushine in a meeting held at a restaurant, at Ms. Connick's request, on or about August 26, 2000. At this meeting Ms. Connick advised Ms. Laushine that there were "racial issues" in the work unit. Ms. Connick reminded Ms. Laushine that she had told her the previous June of the incident with Heather Gill.

13. At the meeting Ms. Connick advised Ms. Laushine that the statement that was made by Ms. Williams was as follows, **"Damn bitch, she talks about us talking all day back and forth and she's never at her desk. We'll take care of her, white trash bitch. We'll have Heather take care of her. Heather will beat her up. Heather will have no problem beating her up."** (emphasis supplied). Ms. Connick also told Ms. Laushine the Grace Clements stated, "That bitch, that bitch was at my desk."

14. At no time did Ms. Laushine or anyone other representative of the CNA investigate the racial harassment reported by Ms. Connick at her August 26, 1999 meeting with Ms. Laushine.

15. On or about September 16, 1999 Shauna Williams again threatened Ms. Connick. In so doing, Williams continued the pattern of racially hostile threats and statements against Ms. Connick. Williams was on the telephone. Ms. Connick heard Williams say into the telephone about her, "This white trash bitch that sits in front of me, white trash bitch, I'll have her taken care of, I'll have someone waiting in the garage for her,

and you know who I mean." Ms. Connick feared for her life as a result of the above quoted threat.

16. Charles Edwards, was CNA's Director of Human Resources, at all times relevant to this matter. Mr. Edwards stated to Ms. Connick and in his deposition in the proceedings before the Massachusetts Commission Against Discrimination that calling a Caucasian "white trash" is just like calling an African American the "n" word

17. Ms Connick reported this racially harassing statements and threats to her physical safety to Abby Laushine and Charles Edwards. However, no action was taken to address the racial harassment of threats to her physical safety.

18. Ms. Connick was in fear for her safety as a result of the conduct of Ms. Williams on September 16, 1999. Ms. Connick thought she would be killed.

19. CNA failed to conduct an adequate investigation or to remedy the harassing and threatening conduct. No disciplinary action was taken against a single employee who engaged in the racially harassing conduct and conduct that reasonably caused Ms Connick to fear for her life.

20. CNA failed to take any action to eliminate the racially hostile environment. No action was taken to make the work environment safe so that Ms. Connick could return to work and not be in fear that the threats on her life would not be carried out.

21. Ms. Connick repeatedly requested that Ms. Williams' desk be moved but this request was denied. Ms. Laushine told Ms. Connick that she was for this move but that

Charles Edwards was against. Ms. Connick told Ms. Laushine that she felt as though the matter was being swept under the rug. Ms. Connick asked to meet face to face with Shauna Williams behind closed doors to discuss the matter. However Ms. Laushine told her this could not be done because they were afraid of Shauna's aggression.

22. CNA failed to move Ms. Williams' work location even after the same was suggested by Detective Nancy Coletta of the Quincy Police Department.

23. Paul Connick, Ms. Connick's husband, asked Charles Edwards during a telephone conference what actions were being taken to give Barbara a safe non-racially hostile work environment. Charles Edwards responded, "I can't guarantee anything."

24. CNA failed to talk with witnesses to the events, including but not limited to, Lisa Wright, Doris (Last name unknown) and others as suggested by Ms. Connick. Contrary to CNA's Code of Professional Conduct policy, this matter was never investigated by Corporate. CNA failed to respond to Ms. Connick's suggestion that Shauna's telephone records be checked.

25. Ms. Laushine admitted that, as of October 4, 1999, "the situation (in the work place) had gotten out of control." Laushine described the situation stating, "The racial piece was still an issue, and it was affecting Barbie."

26. Ms. Connick has not been able to work since the end of September 1999. Ms. Connick has suffered, and continues to the present time to suffer, severe emotional and physical injuries caused by CNA's unlawful conduct. Ms. Connick has suffered constantly from September 27, 1999 to the present time from post traumatic stress

syndrome, major clinical depression, lack of sleep, anxiety, exhaustion, suicidal ideation, loss of self esteem, side effects from medications, inability to concentrate, nausea, inability to sleep, nightmares and dizziness.

27. The unlawful conduct of defendant as set forth above has caused Ms. Connick to lose pay, benefits and perquisites of employment.

28. All conditions precedent under Title VII of the Civil Rights Act of 1964 have been occurred or have been complied with:

   a. A charge alleging discrimination by the defendant on the basis of race was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the discriminatory actions alleged in the Charge.

   b. Ms. Connick received a Notification of Rights regarding her EEOC charge on July 28, 2004.

   c. This complaint has been filed within 90 days of Ms. Connick's receipt of the Notification of Rights.

**COUNT I**
**DISCRIMINATION BASED ON RACE**
**TITLE VIII OF THE CIVIL RIGHTS ACT, AS AMENDED, 42 U.S.C. §2000E, ET SEQ.**

29. Plaintiff Barbara Connick repeats the allegations set forth in paragraphs 1 through 28 above, and incorporates those allegation as if fully set forth herein.

30. The actions and omissions of CNA, as set forth above constitute and cerate a hostile work environment and unlawful discrimination against Ms. Connick based on her race in violation of Title VIII of the Civil Rights Act, as amended, 42

U.S.C. §2000e, et seq.

31. The discriminatory actions and omissions of CNA have caused, continue to cause and will cause Ms. Connick to suffer substantial damages for lost wages and income, the loss of employment benefits, and other pecuniary losses, as well as mental anguish and humiliation, severe emotional distress, the loss of enjoyment of life and other non pecuniary losses.

## PRAYER FOR RELIEF

Plaintiff Barbara Connick prays the court to grant her the following relief:

1. That the plaintiff be awarded appropriate injunctive relief designed to assure that the defendant discontinue its discriminatory practices.

2. That the plaintiff be awarded compensatory damages in an amount to be determined at trial in this matter, plus statutory interest on any such award.

3. That the plaintiff be awarded punitive damages in an amount to be determined at trial in this matter, plus statutory interest on any such award.

4. That the plaintiff be awarded reasonable attorney's fees together with litigation expenses and costs of this action.

5. That the plaintiff be awarded such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

THE PLAINTIFF IN THE ABOVE ENTITLED ACTION DEMANDS A TRIAL BY JURY.

**BARBARA CONNICK, Plaintiff**
By her Attorney,

HOWARD I. WILGOREN, ESQ.
179 Union Avenue
Framingham, MA 01702
(508) 626 - 8600
BBO No. 527840

DATED: October 21, 2004