UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BARBARA CONNICK             \*
                            \*
        Plaintiff           \*
                            \*
v.                          \*   CIVIL ACTION NO.04-12208WGY
                            \*
CONTINENTAL CASUALTY        \*
COMPANY                     \*
                            \*
        Defendant           \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEFENDANT'S ANSWER TO COMPLAINT

Defendant, Continental Casualty Company ("Defendant" or "CNA"), by its attorneys, Sonnenschein, Nath & Rosenthal LLP, hereby answers Plaintiff Barbara Connick's Complaint as follows:

### I.   INTRODUCTION

This action is brought by Barbara Connick against Continental Casualty Company, her former employer. Barbara Connick alleges that Continental Casualty Company discriminated against her in violation Title VIII [sic] of the Civil Rights Act, as amended, 42 U.S.C. §2000e, et seq. because the defendant fostered a work environment that allowed her to be harassed based on her race (Caucasian). Defendant further violated the statute by failing to conduct an appropriate investigation into her several complaints of harassment based on her race and failed to take appropriate action to remedy the unlawful racial harassment. Ms. Connick seeks compensation for the grave harm she suffered and continues to suffer as a result of the actions and omissions of the defendant and seeks equitable and injunctive relief.

**ANSWER:**

Defendant admits that Plaintiff Barbara Connick, a former CNA employee, brings this action against it pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C § 2000e, et seq. ("Title VII"), and that Plaintiff makes the allegations and seeks the compensation described above. CNA denies that it violated Title VII in any way and denies that Plaintiff is entitled to any relief whatsoever in this action.

## II.    PARTIES

1.    Plaintiff BARBARA CONNICK, (Hereinafter, "Connick") is a resident of Hull, Plymouth County, Massachusetts. Plaintiff was an employee of Defendant, Continental Casualty Company for approximately fifteen years until she commenced a medical leave of absence on or about September 1999.

**ANSWER:**

CNA lacks knowledge or information sufficient to form a belief as to whether Plaintiff is a resident of Hull, Plymouth County, Massachusetts, and on that basis denies same. CNA admits that it employed Plaintiff beginning in 1984 and that Plaintiff commenced a medical leave on October 7, 1999 from which she did not return to work. CNA denies the remaining allegations contained in Paragraph 1 of the Complaint.

2.    Defendant, CONTINENTAL CASUALTY COMPANY (Hereinafter, "CNA") has an office located in Quincy, Norfolk County, Massachusetts.

**ANSWER:**

CNA admits the allegations contained in Paragraph 2 of the Complaint.

3.    CNA is a "person" within the meaning of Section 701(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(a).

**ANSWER:**

CNA admits the allegations contained in Paragraph 3 of the Complaint.

4.    CNA is engaged in an industry affecting commerce and employs 15 or more employees, and is an "employer" within the meaning of Section 701(b) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

**ANSWER:**

CNA admits the allegations contained in Paragraph 4 of the Complaint.

### III.   JURISDICTION

5.   This suit is brought and jurisdiction lies pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5(f) and 2000e-5(g), as well as 28 U.S.C. §1331, and 28 U.S.C. §2201 and 2202.

**ANSWER:**

CNA admits the allegations contained in Paragraph 5 of the Complaint.

6.   Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and 42 U.S.C. §§ 2000e-5(f) (3) insofar as all the discriminatory employment practices alleged in her complaint were committed within the County of Norfolk in the Commonwealth, the plaintiff resides in the County of Plymouth in the Commonwealth of Massachusetts and the defendant conducts business and has substantial business contacts in the Commonwealth of Massachusetts.

**ANSWER:**

CNA admits the allegations contained in Paragraph 6 of the Complaint except to deny that it engaged in the discriminatory practices alleged in the Complaint.

### IV.   STATEMENT OF FACTS

7.   CNA employed Ms. Connick for approximately fifteen years. At all relevant times Ms. Connick performed the functions of her job in a fully satisfactory manner. At all relevant times Abbi Laushine was her direct supervisor.

**ANSWER:**

CNA admits the allegations contained in Paragraph 7 of the Complaint.

8.   Ms. Connick was subject to harassment based on her race on an ongoing basis. She reported this conduct to her former supervisor, Laura Nichols, however no action was taken.

**ANSWER:**

Defendant denies the allegations contained in Paragraph 8 of the Complaint.

9.   In June 1999 Greta Thomas, (African American), a co - worker stared at Ms. Connick during an office party. She also threatened Ms. Connick with physical violence. Ms. Connick reported this misconduct to Abby Laushine, however no action was taken.

**ANSWER:**

CNA admits that Plaintiff stated to Abbi Laushine that, during a luncheon on June 24, 1999, co-worker Greta Thomas looked at Plaintiff and asked Plaintiff whether she wanted Thomas to beat her up. CNA lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's statement and on that basis denies same. CNA denies the remaining allegations contained in Paragraph 9 of the Complaint.

10. Between June 1999 and August 1999 Ms. Connick was subject to continual harassment based on her race. Several African American employees, including Heather Gill Grace Clements, Shauna Williams and Ernie Goddard gathered together on a daily basis. They made demeaning and derogatory comments and mimicked employees based on their race.

**ANSWER:**

CNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint and on that basis denies same.

11. During the week August 20, 1999 Grace Clements and Shauna Williams were talking at Shauna's desk. Ms. Connick heard Grace Clements say that she (Ms. Connick) "was pure garbage." Shauna said that, "Heather would have no problem beating her up." Shauna stated, "White trash bitch, we'll get Heather to beat her up"

**ANSWER:**

CNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint and on that basis denies same.

12. Ms. Connick reported the threatening and racially charged statement to her supervisor, Abbi Laushine in a meeting held at a restaurant, at Ms. Connick's request, on or about August 26, 2000. At this meeting Ms. Connick advised Ms. Laushine that there were "racial issues" in the work unit. Ms. Connick reminded Ms. Laushine that she had told her the previous June of the incident with Heather Gill.

**ANSWER:**

CNA admits that during a meeting at a restaurant in August 1999, held at Plaintiff's request, Plaintiff stated to Laushine that, during a luncheon on June 24, 1999, co-worker Greta Thomas looked at Plaintiff and asked Plaintiff whether she wanted Thomas to beat her up and

that there were racial cliques. CNA denies the remaining allegations contained in Paragraph 12 of the Complaint.

13. At the meeting Ms. Connick advised Ms. Laushine that the statement that was made by Ms. Williams was as follows, **"Damn bitch, she talks about us talking all day back and forth and she's never at her desk. We'll take care of her, white trash bitch. We'll have Heather take care of her. Heather will beat her up. Heather will have no problem beating her up."** (emphasis supplied). Ms. Connick also told Ms. Laushine the Grace Clements stated, "That bitch, that bitch was at my desk."

**ANSWER:**

CNA denies the allegations contained in Paragraph 13 of the Complaint.

14. At no time did Ms. Laushine or anyone other [sic] representative of the [sic] CNA investigate the racial harassment reported by Ms. Connick at her August 26, 1999 meeting with Ms. Laushine.

**ANSWER:**

CNA denies the allegations contained in Paragraph 14 of the Complaint.

15. On or about September 16, 1999 Shauna Williams again threatened Ms. Connick. In so doing, Williams continued the pattern of racially hostile threats and statements against Ms. Connick. Williams was on the telephone. Ms. Connick heard Williams say into the telephone about her, "This white trash bitch that sits in front of me, white trash bitch, I'll have her taken care of, I'll have someone waiting in the garage for her, and you know who I mean." Ms. Connick feared for her life as a result of the above quoted threat.

**ANSWER:**

CNA admits that on September 16, 1999, Plaintiff told Charles Edwards that she overheard Williams on the telephone. Defendant denies the existence of a pattern of racially hostile threats and statements against Plaintiff. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 15 of the Complaint and on that basis denies same.

16. Charles Edwards, was CNA's Director of Human Resources, at all times relevant to this matter. Mr. Edwards stated to Ms. Connick and in his deposition in the proceedings before the Massachusetts Commission Against Discrimination that calling a Caucasian "white trash" is just like calling an African American the "n" word

**ANSWER:**

CNA admits the allegations contained in Paragraph 16 of the Complaint, except to state that Edwards' title was Vice President of Human Resources at Quincy.

17. Ms Connick reported this racially harassing statements and threats to her physical safety to Abby Laushine and Charles Edwards. However, no action was taken to address the racial harassment of threats to her physical safety.

**ANSWER:**

CNA admits that Plaintiff made certain complaints to Laushine and Edwards but denies that Plaintiff complained of all of the statements and actions alleged in the Complaint. CNA denies the remaining allegations contained in Paragraph 17 of the Complaint.

18. Ms. Connick was in fear for her safety as a result of the conduct of Ms. Williams on September 16, 1999. Ms. Connick thought she would be killed.

**ANSWER:**

CNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint and on that basis denies same.

19. CNA failed to conduct an adequate investigation or to remedy the harassing and threatening conduct. No disciplinary action was taken against a single employee who engaged in the racially harassing conduct and conduct that reasonably caused Ms Connick to fear for her life.

**ANSWER:**

CNA denies the allegations contained in Paragraph 19 of the Complaint.

20. CNA failed to take any action to eliminate the racially hostile environment. No action was taken to make the work environment safe so that Ms. Connick could return to work and not be in fear that the threats on her life would not be carried out.

**ANSWER:**

CNA denies the allegations contained in Paragraph 20 of the Complaint.

21. Ms. Connick repeatedly requested that Ms. Williams' desk be moved but this request was denied. Ms. Laushine told Ms. Connick that she was for this move but that Charles Edwards was against. Ms. Connick told Ms. Laushine that she felt as though the matter was being swept under the rug. Ms. Connick asked to meet face to face with Shauna Williams

behind closed doors to discuss the matter. However Ms. Laushine told her this could not be done because they were afraid of Shauna's aggression.

**ANSWER:**

CNA admits that Plaintiff suggested that CNA move Shauna Williams' desk. CNA denies the remaining allegations contained in Paragraph 21 of the Complaint.

22. CNA failed to move Ms. Williams' work location even after the same was suggested by Detective Nancy Coletta of the Quincy Police Department.

**ANSWER:**

CNA denies the allegations contained in Paragraph 22 of the Complaint.

23. Paul Connick, Ms. Connick's husband, asked Charles Edwards during a telephone conference what actions were being taken to give Barbara a safe non-racially hostile work environment. Charles Edwards responded, "I can't guarantee anything."

**ANSWER:**

CNA admits that in a conversation with Charles Edwards, Plaintiff's husband Paul Connick expressed concerns about Plaintiff's safety. CNA denies the remaining allegations contained in Paragraph 23 of the Complaint.

24. CNA failed to talk with witnesses to the events, including but not limited to, Lisa Wright, Doris (Last name unknown) and others as suggested by Ms. Connick. Contrary to CNA's Code of Professional Conduct policy, this matter was never investigated by Corporate. CNA failed to respond to Ms. Connick's suggestion that Shauna's telephone records be checked.

**ANSWER:**

CNA denies the allegations contained in Paragraph 24 of the Complaint.

25. Ms. Laushine admitted that, as of October 4, 1999, "the situation (in the work place) had gotten out of control." Laushine described the situation stating, "The racial piece was still an issue, and it was affecting Barbie."

**ANSWER:**

CNA denies the allegations contained in Paragraph 25 of the Complaint.

26. Ms. Connick has not been able to work since the end of September 1999. Ms. Connick has suffered, and continues to the present time to suffer, severe emotional and physical injuries caused by CNA's unlawful conduct. Ms. Connick has suffered constantly from September 27, 1999 to the present time from post traumatic stress syndrome, major clinical

depression, lack of sleep, anxiety, exhaustion, suicidal ideation, loss of self esteem, side effects from medications, inability to concentrate, nausea, inability to sleep, nightmares and dizziness.

**ANSWER:**

CNA admits that in October 1999, Plaintiff went on medical leave from which she did not return to work. CNA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 26 of the Complaint and on that basis denies same. CNA further denies that its conduct in any way contributed to Plaintiff's alleged such symptoms.

27. The unlawful conduct of defendant as set forth above has caused Ms. Connick to lose pay, benefits and perquisites of employment.

**ANSWER:**

CNA denies that it engaged in unlawful conduct and denies the remaining allegations contained in Paragraph 27 of the Complaint.

28. All conditions precedent under Title VII of the Civil Rights Act of 1964 have been occurred or have been complied with:

    a. A charge alleging discrimination by the defendant on the basis of race was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the discriminatory actions alleged in the Charge.

    b. Ms. Connick received a Notification of Rights regarding her EEOC charge on July 28, 2004.

    c. This complaint has been filed within 90 days of Ms. Connick's receipt of the Notification of Rights.

**ANSWER:**

CNA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 of the Complaint and on that basis denies same.

## COUNT I
## DISCRIMINATION BASED ON RACE
## TITLE VIII OF THE CIVIL RIGHTS ACT, AS AMENDED, 42 U.S.C. §2000E, ET SEQ.

29. Plaintiff Barbara Connick repeats the allegations set forth in paragraphs 1 through 28 above, and incorporates those allegation as if fully set forth herein.

- 8 -

**ANSWER:**

CNA adopts and incorporates as if set forth fully herein its answers to Paragraphs 1 through 28 above.

30. The actions and omissions of CNA, as set forth above constitute and cerate [sic] a hostile work environment and unlawful discrimination against Ms. Connick based on her race in violation of Title VIII of the Civil Rights Act, as amended, 42 U.S.C. §2000e, et seq.

**ANSWER:**

CNA denies the allegations contained in Paragraph 30 of the Complaint.

31. The discriminatory actions and omissions of CNA have caused, continue to cause and will cause Ms. Connick to suffer substantial damages for lost wages and income, the loss of employment benefits, and other pecuniary losses, as well as mental anguish and humiliation, severe emotional distress, the loss of enjoyment of life and other non pecuniary losses.

**ANSWER:**

CNA denies the allegations contained in Paragraph 31 of the Complaint.

## PRAYER FOR RELIEF

Plaintiff Barbara Connick prays the court to grant her the following relief:

1. That the plaintiff be awarded appropriate injunctive relief designed to assure that the defendant discontinue its discriminatory practices.

2. That the plaintiff be awarded compensatory damages in an amount to be determined at trial in this matter, plus statutory interest on any such award.

3. That the plaintiff be awarded punitive damages in an amount to be determined at trial in this matter, plus statutory interest on any such award.

4. That the plaintiff be awarded reasonable attorney's fees together with litigation expenses and costs of this action.

5. That the plaintiff be awarded such other and further relief as the Court deems just and proper.

**ANSWER:**

Defendant denies that Plaintiff is entitled to any relief in this action.

## AFFIRMATIVE DEFENSES

Pleading further in accordance with Fed. R. Civ. P. 8, Defendant states the following as affirmative defenses to the Complaint:

### FIRST AFFIRMATIVE DEFENSE

Plaintiff fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims fail, in whole or in part, because Plaintiff failed to comply with the applicable limitations period(s).

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims fail, in whole or in part, because Plaintiff failed to follow the procedural and/or administrative requirements for the maintenance of a lawsuit under Title VII.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims fail to the extent they exceed the scope of her administrative charge of discrimination.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims fail because Defendant exercised reasonable care to prevent and correct promptly any harassing behavior and Plaintiff unreasonably failed to take advantage of Defendant's preventive or corrective opportunities o r to avoid harm otherwise.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims fail because Defendant acted at all times toward Plaintiff in good faith and for legitimate, non discriminatory, non-retaliatory reasons.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for damages fail because Plaintiff failed to mitigate her damages, if any.



**SONNENSCHEIN NATH & ROSENTHAL LLP**

8000 Sears Tower
233 South Wacker Drive
Chicago, IL 60606
312.876.8000
312.876.7934 fax
www.sonnenschein.com

Chicago
Kansas City
Los Angeles
New York
San Francisco
Short Hills, N.J.
St. Louis
Washington, D.C.
West Palm Beach

Catherine S. Nasser
(312) 876-7528
cnasser@sonnenschein.com

December 28, 2004

<u>VIA FEDERAL EXPRESS</u>

Jean M. Kelley, Esq.
Morrison, Mahoney & Miller LLP
115 Commonwealth Avenue
Chestnut Hill, MA  02467

   Re:   <u>Barbara Connick v. Continental Casualty Company, Case No: 04-12208WGY</u>

Dear Jean:

   Enclosed please find a copy of the Answer in the above-referenced matter.  As per our telephone conversation, the Answer must be filed January 3, 2005.  Please sign the Answer and file it with the court.  In addition, could you please send a copy to Plaintiff's Attorney.  Thank you for your assistance in this matter.

                        Sincerely,

               SONNENSCHEIN NATH & ROSENTHAL LLP

By: *[signature]*
                      Catherine S. Nasser

Enclosure

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims fail because workers' compensation provides the exclusive remedy for Plaintiff's claims.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims fail because the incidents she alleges were provoked by her own actions.

WHEREFORE, Defendant, Continental Casualty Company prays that Plaintiff Barbara Connick's Complaint be dismissed in its entirety, at Plaintiff's cost, and that Defendant be granted an award of reasonable attorney's fees and costs, together with such other and further relief that this Court may deem just and equitable under the circumstances.

Respectfully submitted,

By: _____
One of the attorneys for Defendant
Continental Casualty Company

Jeffrey S. Goldman
Catherine S. Nasser
SONNENSCHEIN NATH & ROSENTHAL LLP
8000 Sears Tower
Chicago, IL 60606
(312) 876-8000
(312) 876-7934 (fax)
cnasser@sonnenschein.com

Jean M. Kelley
MORRISON, MAHONEY & MILLER LLP
115 Commonwealth Avenue
Chestnut Hill, MA 02476
(617) 964-0323
(617) 969-8337 (fax)
jeanmkelley@comcast.net