UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BARBARA CONNICK,<br><br>        Plaintiff,<br><br>v.<br><br>CONTINENTAL CASUALTY<br>COMPANY,<br><br>        Defendant. | CIVIL ACTION NO. 04-12208-WGY |

## DEFENDANT'S MOTION TO COMPEL

Defendant Continental Casualty Company ("CNA" or the "Company"), by its attorneys, Sonnenschein Nath & Rosenthal LLP, hereby move this Court for an Order compelling Plaintiff Barbara C. Connick ("Plaintiff" or "Connick") to respond in full to Interrogatories 11, 12, 17 and 18 and Document Request No. 13 and to execute and return to CNA's counsel medical authorizations previously sent to her by CNA. In support of this motion CNA states as follows:

### Background Facts

1. On October 24, 2004, Plaintiff Barbara Connick filed a complaint alleging that Defendant CNA subjected her to a hostile work environment based on her race (Caucasian).

2. Connick contends that she has been unable to work since September 1999 -- and therefore took a disability leave of absence from CNA -- due to severe emotional and physical injuries caused by CNA's actions. Specifically, Connick alleges that:

> Connick has not been able to work since the end of September 1999. Ms. Connick has suffered, and continues to the present time to suffer, severe emotional and physical injuries caused by CNA's unlawful conduct. Ms. Connick has suffered constantly from September 27, 1999 to the present time from post traumatic stress syndrome, major clinical depression, lack of sleep, anxiety, exhaustion, suicidal ideation, loss of self esteem, side effects from medications, inability to concentrate, nausea, inability to sleep, nightmares and dizziness.

(Complt. ¶ 26).

> The discriminatory actions and omissions of CNA have caused, continue to cause and will cause Ms. Connick to suffer substantial damages for lost wages and income, the loss of employment benefits, and other pecuniary losses, as well as mental anguish and humiliation, severe emotional distress, the loss of enjoyment of life and other non pecuniary losses.

(Complt. ¶ 31).

3. Connick had also taken a disability leave of absence from CNA commencing in 1994. Connick has provided testimony that her 1994 leave was occasioned by depression secondary to workplace stress and that her doctor had prescribed several medications to alleviate workplace stress. (See Tab 1, Connick Dep., pp. 16-20).[1] In addition, documents produced by Connick state that she received outpatient treatment from a mental health facility in at least 1995 and 1996, and that as of October 1999, she had already been prescribed Xanax -- an anti-anxiety medication.

### Procedural History

4. On May 24, 2005, CNA served Connick with its First Set of Interrogatories and First Request for the Production of Documents in this matter. Connick responded to these Interrogatories and Requests for Production on or about August 1, 2005, after a series of extensions granted by CNA for a myriad of reasons, including a death in Connick's family. (See Tabs 2 and 3, respectively).

5. Several of CNA's requests sought information pertaining to Connick's 1994 leave from CNA and her mental health since that time. At this time, Connick refused to provide any

---

[1] Connick provided deposition testimony while her charge of discrimination in this matter was being investigated by the Massachusetts Commission Against Discrimination. Connick has expressly incorporated her deposition testimony into this matter through her discovery responses. (See, e.g., Tab 3, Response to Request for Production, ¶¶ 1-7, 12, 13).

information pertaining to the time period prior to September 1999. The requests at issue, and Connick's responses thereto, are as follows:

**INTERROGATORY NO. 11:**

Do you contend that you have been injured or damaged by the acts or omissions of Defendant? If you content [sic] that you have suffered any physical, mental or emotional injuries proximately caused by Defendant, please describe the nature and duration of the alleged injury and identify all physicians, psychiatrists, psychologists, clinical social workers, clergy, counselors, or other healing arts professionals from which you have sought or obtained treatment for such injuries since January 1, 1994 to the present.

**RESPONSE NO. 11:**

**OBJECTION:** The interrogatory is not designed to lead to the production of relevant evidence, and is overbroad, Notwithstanding the foregoing objection, the interrogatory will be answered with for the period from September 1999 to the present time.

I have suffered severe emotional and physical injuries caused by Respondent's unlawful conduct. I have suffered constantly from September 1999 to the present time from post traumatic stress syndrome, major clinical depression, lack of sleep, anxiety, exhaustion, suicidal ideation, loss of self esteem, side effects from medications, inability to concentrate, nausea, inability to sleep, nightmares and dizziness. Dr. Robert Sipzener, Kate Taylor, Dr. Collella, Dr. Accardi and Gil Peters have treated me.[2]

**INTERROGATORY NO. 12:**

If you contend that you have suffered any physical injury proximately caused by Defendant, please describe the nature and duration of the injury and identify all physicians, osteopaths, naturopaths, homeopaths, or other healing professionals from whom you have sought or obtained treatment for such injuries since January 1, 1994 to the present.

**RESPONSE NO. 12:**

---

[2] Connick also identified Gil Peters and Alex Accardi in response to Interrogatory No. 1, which requested that Connick identify all persons she believed "to have knowledge of facts, statements or circumstanced relevant to the allegations in your Complaint..." Specifically, Connick stated that both Peter and Accardi are "aware of the ongoing emotional distress suffered by plaintiff." (See Tab 2).

-3-

See the answer to interrogatory number 11 above.

**INTERROGATORY NO. 17:**

Please identify and describe the nature of your leave from CNA in 1995, including, but not limited to, the reasons for the leave, any persons with knowledge of the facts and circumstances of this leave and the issues upon which you believe they have knowledge.

**RESPONSE NO. 17:**

**OBJECTION:** The interrogatory is not designed to leave to the production of relevant evidence.

**INTERROGATORY NO. 18:**

Please identify and describe the nature of any leave from CNA, including, but not limited to, the reasons for the leave, any persons with knowledge of the facts and circumstances of this leave and the issues upon which you believe they have knowledge.

**RESPONSE NO. 18:**

**OBJECTION:** The interrogatory is nor designed to leave to the production of relevant evidence.

**[DOCUMENT] REQUEST NO. 13:**

Documents which relate to Plaintiff's physical and/or mental state or condition, illness, diseases and/or ailments since January 1, 1994, including, but not limited to, all documents relating to medical or psychiatric diagnoses, psychological counseling, medical records, therapist records, evaluations, care, bills and payments for medical, psychiatric, psychological or therapist care and prescriptions.
Response:

**RESPONSE NO. 13:**

Complainant objects to the Request as it seeks documents which that are not relevant to the instant matter. Without waiving said objection, attached hereto as Exhibit 2[3] are various records from doctors who have treated Ms. Connick for emotional and physical injuries arising from Respondent's discriminatory conduct. Also see the transcripts of the depositions of Barbara Connick.

---

[3] Exhibit 2 of Connick's discovery responses included session notes and progress notes from various of her treating personnel for the time period October 1999 and mid-2000. These notes include references to conversations between Connick and her psychiatrist, Dr. Collella.

-4-

6. In addition, on May 24, 2005 and September 1, 2005, CNA's counsel served on Connick authorization forms for the medical and other treating personnel identified by Connick, including Dr. Robert Sipzener, Kate Taylor, Dr. Collella, Dr. Accardi and Gil Peters. (See Tab 4, Forms and Cover Letters). These forms sought Connick's authorization to allow CNA to obtain documents regarding these individuals' treatment of Connick since 1994. *Id.* Connick has not returned same.

7. On August 29 and September 7, 2005, CNA's counsel, Dana Gruen ("Gruen") and Catherine Nasser ("Nasser"), spoke with Connick's counsel Howard Wilgoren ("Wilgoren") regarding obtaining documents for the time period 1994 to the present. During these conversations, Wilgoren stated that he limited his client's responses to the time period September 1999 to the present, because he believes five years to be a reasonable period of time within which to search medical records. However, Wilgoren agreed to return the signed releases for the time period of September 1999 to the present. He also stated that, at present, he believes the treating personnel will testify on Connick's behalf.

8. On approximately September 9, 2005, Nasser left a substantive voice message for Wilgoren regarding the status of the medical releases. This message was not returned. On September 20, 2005, Nasser left a subsequent message. Wilgoren returned this call. During this conversation, Wilgoren agreed to extend the relevant time period for the discoverability of documents from 1994 to the present. Wilgoren agreed to the immediate execution of the medical releases and to supplement the interrogatory responses at issue. Nasser sent an e-mail confirmation of this conversation to Wilgoren, again stressing the importance of this information to CNA's defense of this matter and to its designation of a potential expert. (See Tab 5). The e-mail requested that the releases be returned to CNA's counsel by September 28, 2005, and that the interrogatory response be supplemented by October 5, 2005.

9. On September 28, 2005, the date the releases were due, CNA had not received the releases. Nor has Connick supplemented her discovery responses to include responsive information and documents for the time period 1994 to the present. It has been approximately <u>four months</u> since CNA sent Connick its discovery requests and initial set of medical releases.

### Argument

10. Connick's actions are clearly for the purpose of delay and must be stopped. Connick received the discovery requests and initial set of medical releases and discovery requests in May, 2005 -- four months ago. Time and again Connick requested extensions, or simply took the liberty of self-approved extensions, to delay CNA's receipt of the fact-related discovery it seeks. It is imperative to CNA's defense of this matter, including its designation of an expert witness, to receive the information that is only available from Connick's treating personnel, as well as the information that predates September 1999.

11. In the event that Connick reneges her September 20, 2005 concession to produce information prior to September 1999, and maintains her objection that such information is irrelevant, CNA argues that this information, particularly that pertaining to Connick's 1994 leave of absence -- including her past medical records -- is directly relevant to this case. In her Complaint, Connick claims that she suffered severe emotional distress as a result of a racially hostile work environment, and further, that she was and is unable to work because, among other things, she fears for her safety. (See Complt. ¶¶ 26, 31). Connick's claim is premised on a causal link between the alleged incidents of harassment and her alleged current mental condition. *Id.* CNA is entitled to identify other reasons, such as an underlying psychiatric disorder, for her alleged emotional distress. Given that Connick's 1994 leave of absence was due to a mental or nervous condition and that she was treated by a mental health facility in at least 1995 and 1996, this is indeed quite plausible. The only way for CNA to demonstrate that Connick had such a

disorder prior to the incidents of which she now complains is to examine her past medical history. *See Ricciardi v. Sylvester Sheet Metal Corp.*, No. C-94-101-L; 1995 U.S. Dist. LEXIS 5029 (D. N.H. Apr. 7, 1995) (compelling plaintiff-former employee to produce 10-years of medical records to "allow the parties to obtain the fullest possible knowledge of the issues and facts before trial."); *See Linscott v. Burns*, Case No. 2003-00648; 2005 Mass. Super LEXIS 19 (Mass. Super. Ct., Jan. 27, 2005)(holding that, if the plaintiff -- who asserted mental impairment as a result of an auto collision -- intended to all her psychotherapists as witnesses or offer into evidence the substance of any conversations with her therapists, she would be compelled to produce any and all records of treatment with psychiatrists or counselors during the ten-year period before the collision)

12.    Connick's post-September 1999 medical records are insufficient to enable CNA to fully establish other reasons for Connick's alleged emotional distress. First, this time period does not even encompass all of the incidents alleged in her Complaint. Indeed, Connick complains that she was subject to harassment as early as June 1999. (Complt. ¶ 10). Certainly, CNA is entitled to review Connick's medical records for the entire period of time for which she is alleging emotional distress. Further, Connick's post-September 1999 medical records fail to provide or account for her complete medical history, and thus these records do not offer the complete picture necessary for CNA to determine the cause of her alleged emotional distress.[4] It is axiomatic that to fully evaluate and properly diagnose any patient, a doctor needs a medical history. Indeed, it is often the very first thing a doctor will ask for upon seeing a patient. CNA is

---

[4] For example, document produced by Connick state that she received outpatient mental health treatment in 1995 and 1996, but fails to provide the reason(s) for or extent of this treatment.

likewise entitled to the information to allow it to properly evaluate Connick's claims of severe emotional distress.[5]

13.  Information pertaining to Connick's 1994 leave is also relevant to assess Connick's credibility. Connick's description, contained in her deposition, of the events surrounding her 1994 disability leave are remarkably similar to the allegations made in her instant complaint, including that she was stalked, harassed and fearful for her safety. (Compare, Connick Dep., pp. 16-20 to Complaint ¶¶ 13-15). CNA seeks to determine whether, since 1994, Connick's identified medical personnel have treated her for any psychiatric symptoms, which, for example, might cause her to overstate incidents with her co-workers.

WHEREFORE, CNA respectfully requests this Court to enter an Order (1) compelling Connick to send the executed medical releases to CNA within three days thereof; (2) compelling Connick to respond in full to Interrogatories 11, 12, 17 and 18 and Document Request No. 1 within seven days thereof; and (3) extend the discovery deadline to December 30, 2005, allowing an additional month for all fact-related discovery.

### CERTIFICATE PURSUANT TO LOCAL RULE 7.1(A)(2)

Pursuant to LR 7.1(A)(2), CNA's undersigned counsel hereby certifies that prior to filing this Motion CNA's counsel conferred with plaintiff's counsel and attempted in good faith, but without success, to resolve the matters in issue.

Respectfully submitted,

SONNENSCHEIN NATH & ROSENTHAL LLP

By: *Catherine Maxwell* (signature)

---

[5] Connick has not asserted the psychotherapist-patient privilege in response to CNA's discovery requests. Even if she did, she has clearly waived the privilege by claiming severe emotional distress, producing documents of communications between herself and her psychiatrist and introducing (as she intends to do) testimony from her psychotherapist. *See, Linscott*, 2005 Mass., Super. LEXIS 19 at * 9 (psychotherapist-patient privilege would be overcome where plaintiff, who asserted a mental impairment, certified that her psychotherapists would testify.

- 9 -

                                       One of the attorneys for Defendant
                                       Continental Casualty Company

Jeffrey S. Goldman
Catherine S. Nasser
SONNENSCHEIN NATH & ROSENTHAL LLP
8000 Sears Tower
233 S. Wacker Dr.
Chicago, Illinois 60606
(312) 876-8000
(312) 876-7934 (facsimile)

Scott Douglas Burke
Lynne McNeill
Morrison, Mahoney & Miller LLP
250 Summer Street
Boston, Massachusetts 02210
(617) 439-7500
(617) 969-8737 (facsimile)

11936832v4

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail (by hand) on 9-30-05